## HOGAN v. GLUECK.

(Supreme Court, Appellate Division, Second Department.　February 18, 1896.)

COMPLAINT—AMENDMENT TO SHOW JURISDICTION.
　　Amendment of a complaint in an action in a municipal court—which has a limited jurisdiction, dependent on residence of defendants—so as to allege, in conformity with the evidence, that defendant was a resident of the city, should be allowed.

Appeal from city court of Yonkers.

Action by James J. Hogan against Max Glueck. From a judgment dismissing the complaint and denying a motion to amend, plaintiff appeals. Reversed.

Argued before BROWN, P. J., and PRATT, CULLEN, BARTLETT, and HATCH, JJ.

I. J. Beaudrias, for appellant.
William Riley, for respondent.

BROWN, P. J. The plaintiff's complaint in this action was dismissed, after all the testimony had been introduced by both parties, on the ground that the complaint was defective, in not alleging that the defendant was a resident of the city of Yonkers. The city court of Yonkers, in respect to civil actions, is given jurisdiction by statute in cases where the defendant resides in said city, or in a town of Westchester county adjoining that city, or where a warrant of attachment has been granted, to accompany the summons, and levied on property of the defendant within that city. This action was brought to recover damages for an alleged malicious prosecution. The complaint contained no allegation that the defendant was a resident of the city of Yonkers, and in this respect was defective. In the view we take of the case, it is not necessary to determine whether the objection thereto was waived by the defendant's failure to take it by demurrer or answer. Code Civ. Proc. § 499. At the close of the testimony the defendant moved for judgment on the ground that the court had no jurisdiction to determine the action, whereupon the plaintiff moved to amend his complaint by inserting an allegation that the defendant was a resident of the city of Yonkers, and in that respect to conform the pleading to the proof. The learned city judge, in his decision, states that in his opinion the plaintiff had a meritorious cause of action, but felt constrained to deny the plaintiff's motion, and to dismiss the complaint, on the ground that there was no evidence that the defendant was a resident of said city at the time of the commencement of the action. The complaint alleged that the defendant had, before the acting judge of the city court of Yonkers, on August 28, 1895, charged the plaintiff with having maliciously broken open a door in a hallway on defendant's premises. The answer, while specifically denying this allegation of the complaint, alleged that "the defendant saw the plaintiff break with a hammer the lock of the door of the premises of which defendant was then the tenant and

in possession." Upon the trial it appeared that both parties were tenants of one Larry Condon, and occupied portions of a house known as "15½ Palisade Avenue," in said city. Hogan occupied the ground floor as a saloon, and the defendant lived with his family on the floor over the saloon. The plaintiff testified as follows: "I know Max Glueck. He lives at 15½ Palisade avenue." Richard Condon, a son of Larry Condon, testified in reference to the premises as follows: "The hallway is for the use of Mr. Hogan, on the basement floor; Mr. Glueck, on the next floor; and another tenant. * * * I granted to Mr. Glueck the use of that hallway." Glueck himself testified that he was a tenant of the apartments over Hogan, and saw him break the lock of the hall door; that after he saw him break the lock he went downstairs, and that his wife came down and complained; and that he (Glueck) then went out and consulted a lawyer, and caused the complaint to be made upon which Hogan was arrested. He further testified that he told the lawyer that Hogan occupied the saloon, and that he (Glueck) lived on the first floor over the saloon. Near the close of his testimony he was asked the following question by his counsel, and made the following answer: "Mr. Glueck, does Mr. Hogan's family live in the same building that you do?  A. No, sir; two houses away." This testimony, we think, showed clearly that the defendant lived in the building where the offense with which plaintiff had been charged was alleged to have been committed. The argument that it does not show that he lived there at the time the action was commenced is not worthy of serious consideration. The offense was charged to have been committed on August 28th, and this action was commenced on August 30th, and proof of the fact that defendant lived in Yonkers on the 28th permitted the conclusion that he was living there two days later. The probative force of the testimony was not confined to the exact moment of which the witness spoke. When it appeared that the defendant lived within the jurisdiction of the court within a reasonable time prior to the commencement of the action, the conclusion was permitted that he was residing there when the action was commenced. But much of the testimony referred to related to the time of the trial, and showed that the defendant's residence at that time was the same as it was on the 28th of August. Indeed, it is apparent from a reading of the testimony that the case was tried by both parties on the theory and assumption that the defendant was a resident of the city of Yonkers, and within the jurisdiction of the court, when the action was commenced. We are of the opinion, therefore, that, as it appeared affirmatively that the court had jurisdiction of the action, the motion to amend the complaint should have been granted.

The judgment and order must be reversed, and a new trial granted, with costs to abide the event.  All concur.